UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF WISCONSIN

```
------------------------
In Re:                      :    Case Nos. 08-31860
                            :              09-21519
                            :
FISCA OIL CO. and           :    Milwaukee, Wisconsin
STRECKRICH PETRO CORP.      :
                            :    Thursday, June 3, 2010
            Debtors.        :
------------------------
```

TRANSCRIPT OF HEARING HEARD BEFORE THE
HONORABLE JUDGE PAMELA PEPPER
UNITED STATES BANKRUPTCY JUDGE


TRANSCRIPT ORDERED BY:

    Jannette Florczak, Secretary
    (U.S. Trustee's Office)


APPEARANCES:

For the Debtors:    PATRICK B. HOWELL, ESQ.
    (Whyte Hirschboeck Dudek, PC)
    555 E. Wells St.
    Milwaukee, WI 53202

    MELINDA A. BIALZIK, ESQ.
    (Godfrey, Braun & Frazier, LLP)
    735 N. Water St., 16th Floor
    Milwaukee, WI 53202

For Creditor    ROBERT K. STEUER, ESQ.
A.E. Wease:    (Law Offices of Robert K. Steuer)
    320 E. Buffalo Street
    Milwaukee, WI 53202

For the U.S.
Trustee:    DEBRA SCHNEIDER, ESQ.
    (U.S. Trustee's Office)
    517 E. Wisconsin Avenue
    Milwaukee, WI 53202

AudioEdge Transcription, LLC
425 Eagle Rock Avenue
Roseland, New Jersey 07068
(973) 618-2310
www.audioedgetranscription.com

<u>I N D E X</u>
<u>6/03/10</u>

<u>AS TO MOTION TO CONVERT</u>                                        <u>PAGE</u>

    By Mr. Howell                                          4

    By Ms. Schneider                                       5

<u>AS TO DISCLOSURE STATEMENT AND</u>
<u>CONFIRMATION</u>

    By Mr. Howell                                          7

<u>COURT DECISION</u>                                                  8

<u>AS TO TAX CLAIMS</u>

    By Mr. Howell                                          9

    By Ms. Schneider                                      15


<u>WITNESS</u>                    <u>DIRECT</u>   <u>CROSS</u>   <u>REDIRECT</u>  <u>RECROSS</u>

<u>FOR THE DEBTOR</u>

OWEN RICHELIEU, III

    By Mr. Howell        17

    By Mr. Steuer                 36

    By Ms. Schneider              38

                                                            <u>PAGE</u>

<u>COURT DECISION AS TO CONFIRMATION</u>                    42

<u>MOTION TO CONVERT WITHDRAWN</u>                           45

1          (Proceedings begin at 3:13 p.m.)

2          THE CLERK:  The Court calls the jointly

3    administered case 2008-31860 and 2009-21519, <u>Streckrich</u>

4    <u>Petro and Fisca Oil Company</u>.

5          Please state your appearances for the record.

6          MR. HOWELL:  On behalf of Streckrich Petro

7    Corporation and Fisca Oil Company, Attorney Patrick B.

8    Howell.  Also present with me, Your Honor, today is Owen

9    Richelieu, Paul Streckmann, and Melinda Bialzik, the

10   counsel for the individuals.

11         MR. STEUER:  Robert K. Steuer on behalf of A.E.

12   Wease Company, a creditor.

13         MS. SCHNEIDER:  Debra Schneider on behalf of

14   the U.S. Trustee.

15         THE COURT:  Good afternoon to everyone.

16         We have several matters -- excuse me -- on the

17   docket this afternoon.  With regard to Fisca Oil, we had

18   adjourned our hearing on the U.S. Trustee's motion to

19   convert that case, and adjourn that until today.

20         And then with regard to Streckrich, we had

21   scheduled today's hearing for approval of the disclosure

22   statement, and a confirmation hearing on the plan.

23         I should note that with regard to the United

24   States Trustee's motion to convert one of the issues, of

25   course, was the filing of the monthly operating reports

1  in that case.  And I do see that, at least, there have

2  been some filed since we last were together.

3         I also note that in Fisca, Mr. Howell filed on

4  behalf of the debtor in possession, the affidavit with

5  regard to balloting, attached the relevant ballots there,

6  indicating what classes voted, and if they did vote, what

7  those votes were.  So I'm assuming that Mr. Steuer, Ms.

8  Schneider, each of you saw those?

9         MS. SCHNEIDER:  Yes, Your Honor.

10        THE COURT:  All right.

11        MR. STEUER:  Yes, Your Honor.

12        THE COURT:  All right.  Thank you.

13        If we could, I'd like to take up the motion to

14  convert first, and hear from the parties as to what the

15  status of that is, and where we are on it.

16        So, Mr. Howell?

17        MR. HOWELL:  As the Court has noted, since we

18  last met, monthly operating reports were filed, and

19  subsequently amended after discussions with the United

20  States Trustee regarding what they perceived to be some

21  deficiencies, and some additional information that they

22  wanted.

23        They have been filed.  We believe that we've

24  complied with the majority of the concerns that the U.S.

25  Trustee has.  I think, with reports of those magnitude

1    are not always going to hit the ball squarely, but I

2    believe that we have substantively and substantially

3    complied with the operating report requirement.

4            As to the fees, the Court may recall that we

5    had an overpayment in Streckrich, an underpayment in

6    Fisca.  A request was made to balance those items out.

7    They -- in fact, the United States Trustee's Office did

8    make such reimbursement and application from Streckrich

9    to Fisca.  So that's been satisfied.  And this afternoon,

10   Mr. Richelieu brought a check which represents the

11   disbursements through May -- through June 30th.

12           THE COURT:  June 30th.  Okay.

13           MR. HOWELL:  And that's been delivered to the

14   United States Trustee's Office.  So I've not received

15   word that the U.S. Trustee's Office is withdrawing their

16   motion.  I believe that we've complied, however.

17           THE COURT:  Okay.  Thank you, Mr. Howell.

18           Ms. Schneider?

19           MS. SCHNEIDER:  Your Honor, there have been

20   amended reports that have been filed.  We still have

21   mathematical issues with them.  However, we would like to

22   table our motion to convert, and see if this case can be

23   confirmed.  And so if we can set that aside, and if the

24   case can be confirmed, we don't want to stand in the way

25   of confirmation.  UST fees have, in fact, been paid.  The

 1   check was handed to Ms. Saladin of our office earlier.

 2              THE COURT:  Okay.  All right.  Thank you, Ms.

 3   Schneider.

 4              Mr. Steuer, any oar in the water with regard to

 5   this issue?

 6              MR. STEUER:  No, Your Honor.

 7              THE COURT:  All right.

 8              All right.  Well, given that, then let's turn

 9   to the motion to approve the disclosure statement, and

10   the confirmation hearing.

11              The debtor in possession provided parties of

12   interest with a deadline by which to file any written

13   objections to the disclosure statement, or the

14   confirmation of the plan.  I note that when I checked the

15   docket, there were no such objections that I saw.  So as

16   far as I'm aware, there have not been any filed.

17              Mr. Howell, I know that you've been in ongoing

18   discussions with the United States Trustee, with Mr.

19   Steuer, with regard to any perhaps informal communication

20   they may have wished to have.  So is there anything that

21   you'd like to address in that regard?

22              MR. HOWELL:  As to the disclosure statement,

23   the amended disclosure statement, Your Honor, there have

24   been no objections, no input, no suggestions for change

25   to the disclosures that were made from creditors that

1   aren't appearing here today, or from Mr. Steuer, or the

2   U.S. Trustee's Office.

3           As to the amended plan of reorganization,

4   again, as the Court noted, no formal objection has been

5   filed by any creditor.  My discussion with Mr. Steuer

6   would indicate that his client does not have an

7   objection.

8           The Court -- my discussions with Ms. Schneider

9   indicate an issue with respect to two late filed claims

10  are matters about which we need to engage the Court in a

11  discussion and see where we are with respect to the plan

12  of confirmation.  No plan of reorganization.  No formal

13  objection has been raised by the United States Trustee.

14  Ms. Schneider has asked me to think about how we want to

15  deal with two past claims.  And if I may, I'm happy to

16  disclose where we're at on this.

17          THE COURT:  Okay.  Thank you.  Let me come back

18  to that in just a minute, Mr. Howell.  I hope that the

19  discussion you want to engage me in doesn't recall --

20  require me to like actually function at any level.  My

21  brain feels like I'm walking on the bottom of the ocean.

22  It's what comes with having an eight-year-old who comes

23  home with every disease on the planet, and then a week

24  later, I have it.  He doesn't get bothered by it, but I,

25  on the other hand, am felled like a great oak in the

 1   forest.

 2          Mr. Steuer, with regard to the disclosure

 3   statement.  Any issues or concerns?

 4          MR. STEUER:  No issues at all, Your Honor.

 5          THE COURT:  And, Ms. Schneider, with regard to

 6   the disclosure statement?

 7          MS. SCHNEIDER:  No issues with the disclosure

 8   statement.

 9          THE COURT:  All right.

10          Given that then, and having reviewed -- I'm

11   sorry.  And I should say the amended disclosure

12   statement.  I do recall that this was the one that was

13   amended after our earlier discussions.  I will approve

14   the amended disclosure statement, as filed.

15          With regard to the plan, the proposed amended

16   plan, Mr. Steuer, on behalf of A.E. Wease, any objection?

17          MR. STEUER:  There is none, Your Honor.

18          THE COURT:  Thank you.

19          Okay.  That being said -- and I think all that

20   leaves us then is this issue.

21          Mr. Howell, Ms. Schneider, what's going on?

22          MR. HOWELL:  In light of the Court's cold, be

23   sure -- be sure to stop me if I'm unintelligible and --

24          THE COURT:  If I need it to be repeated eight

25   times?  Yes.

1          MR. HOWELL:  Right.  Mr. Steuer will stop me

2    almost immediately, if that's the rule.  I understand,

3    but --

4          THE COURT:  Thank you.  I'll have Mr. Steuer's

5    assistance in that regard.

6          MR. HOWELL:  We have two claims that were filed

7    by taxing authorities since May 1st, 2010.  The first

8    claim was filed by the Ohio Department of Taxation, for

9    approximately 27,500.  That claim is for franchise tax

10   assessments for a period which predate the petition by 40

11   some days, and for a period after the petition, until

12   June 30th, 2009.

13         So the Ohio Department of Taxation filed a

14   claim with -- which bridges the Fisca petition date.  As

15   a result, we have an unsecured priority tax claim as part

16   of this late filed claim, and an administrative claim

17   that needs to be addressed.  The debtor has objected to

18   this claim on a number of bases, and a hearing is set for

19   this court on July 7th, I believe, with respect to this

20   claim.

21         THE COURT:  Those were filed at Fisca, right?

22         MR. HOWELL:  Yes.

23         THE COURT:  Okay.

24         MR. HOWELL:  Yes.

25         THE COURT:  That's what I thought because I was

1    first looking at the claims registered in Streckrich, and

2    then I remembered seeing objections to this one.

3           MR. HOWELL:  So as to the Ohio Department of

4    Taxation, they filed a claim.  We've objected to it.  The

5    hearing is coming on.  But, as Ms. Schneider points out,

6    the debtor now has a claim which is really of two

7    components.  One that can be treated under a five-year

8    rule with respect to 11:29A-9(c), and that's the pre-

9    petition part.

10          And the post-petition part, as an

11   administrative claim, Ms. Schneider takes a position that

12   it must be paid upon the effective date, unless the

13   claimant agrees otherwise.  While I think that having the

14   objection, and having the plan terms that call for

15   payment upon a court order with respect to that claim, I

16   believe that we've reached a resolution about how we're

17   going to proceed with this.

18          And so there is in my trust account,

19   approximately -- or will be, by the end of the day,

20   $324,000, representing the sale of property that's

21   occurred last fall and, again, probably a closing that

22   occurred yesterday or today, with respect to Joplin,

23   Missouri property.

24          Of this money that I have, it is the debtor's

25   proposal to take the amount of the alleged Ohio

1  Department of Taxation claim, and set it aside, and not

2  distribute it until there's a resolution of the Ohio

3  Department of Taxation claim.

4          THE COURT:  The entire amount of the claim?

5  The twenty-seven-five?

6          MR. HOWELL:  That is our proposal.  I think

7  part of it's pre-petition, but I -- it would be a

8  mathematical calculation to figure out, on a per diem

9  basis, which is which.  So I'm just proposing --

10         THE COURT:  Yeah.

11         MR. HOWELL:  -- to set the whole thing aside.

12         THE COURT:  I didn't know if you had done that,

13  or if you had a sense of --

14         MR. HOWELL:  I --

15         THE COURT:  -- what belongs where.  Okay.

16         MR. HOWELL:  Based on the claim as filed.  And

17  so, in order to ameliorate any concerns about whether

18  sufficient sums were set aside, or available to pay upon

19  the determination of whether the claim is valid or not,

20  the debtor is proposing to set aside the entire amount.

21         As to the pre-petition unsecured priority

22  claim, that would fall into what I have denominated as

23  Class 3 of the debtor's plan.  It's set forth on Page 3

24  of the disclosure statement, Judge, if you have it.

25         THE COURT:  Thank you.

 1              MR. HOWELL:  It's a chart, I believe.

 2              THE COURT:  Uh-huh.

 3              MR. HOWELL:  And that chart was prepared when

 4      these -- before these claims were filed.

 5              THE COURT:  Right.

 6              MR. HOWELL:  And so what the debtor proposes to

 7      do is to amend the plan, as to Class 3, to allow for the

 8      payment of the claim, pursuant to 11:29A-9(c), the five-

 9      year rule, and give the Department of Taxation of Ohio

10      exactly what it's entitled to, under the code, should

11      they have a claim that's allowed.

12              And so, I think, with the Court's permission,

13      we'll amend the plan, and I guess we can get to this

14      later.  But I think we need to amend the plan to deal

15      with the claim that we don't believe we're ever going to

16      have to pay, but which is, nevertheless, out there.

17              As to the post-petition amounts, since Class 1

18      already contemplates they're going to be paid pursuant to

19      the terms, I don't think any reorganization -- excuse me

20      -- modification of the plan in necessary, as to Class 1,

21      should any part of the Ohio taxation claim fall into

22      Class 1.

23              THE COURT:  Okay.  I got you so far.

24              MR. HOWELL:  Okay.  Thank you.

25              Now I want to move to the Internal Revenue

1  claim, which was a much larger claim, $451,000.  And that

2  came in after the plain was filed as well.  And it is a -

3  - an alleged tax from 2006, even before Messrs. Richelieu

4  and Streckmann bought this company.  And the debtor has

5  objected to that claim.  Again, we have a July 7th

6  hearing date.  And because it's an unsecured priority tax

7  claim, it falls into Class 3, subject to the five-year

8  rule, which provides another reason why I need to amend

9  the plan as to Class 3 only, to allow for treatment under

10 the code, as to what I suggested.

11         Now the -- as Mr. Richelieu's testimony will

12 eventually demonstrate, even if the Court should allow

13 these claims, we have property values sufficient in the

14 sales to cover all of these claims.  We don't believe

15 they're allowable, but we have -- as to the feasibility

16 issue, which we'll get to in testimony, I believe that we

17 can handle that.  This particular tax started in 2006,

18 when the Social Security Administration doubled up, by

19 accident, the amount of employment -- amount of wages

20 paid by the then Fisca.  They doubled up the taxes.  The

21 passed that mistake on to the IRS.  Eventually four years

22 later, the IRS picked it up through their machines, and

23 assessed this liability.

24         The Social Security Administration has already

25 written the debtor, in a writing that said that's a

1   mistake.  We fixed our records.  We've sent them on to

2   the IRS.  Mr. Val Thomas of the IRS said he sent it on to

3   his organization and the right department.  In due

4   course, it may very well resolve itself.  But I can't

5   wait.  I object.  And so this matter is going to be

6   moving on before the Court.

7           So we don't think we have any of these

8   liabilities, Judge.  But in case we do, I think we need

9   to modify Class 3, to allow for the five-year treatment.

10  What I would propose is that the order -- the Court issue

11  an order -- if I can get through all the other hurdles of

12  getting this plan confirmed -- that an order be issued

13  authorizing the carve out of 27,500 set aside, that the

14  plan be amended as I've indicated to you.  That I provide

15  21-day notice to creditors, if they have any objection,

16  and absent any objection, an order confirming the plan

17  would then be entered, rather than having another

18  confirmation hearing.

19          I think there are more expeditious ways, but

20  I'm not sure they'll satisfy the notice and disclosure

21  requirements, the United States Trustee, and the Court.

22  So that's the issue that Ms. Schneider have been

23  wrestling with all of this week, and that's the

24  resolution we prose.

25          THE COURT:  Okay.  All right.  Thank you, Mr.

1  Howell.

2           Ms. Schneider?

3           MS. SCHNEIDER:  I was thinking that Mr. Howell

4  has laid it out pretty clearly.  The aspect -- what the

5  question was is how is he going to meet the requirements

6  of 11:29A with these tax requirements, and the post-

7  petition, it's our position that he has to comply with

8  11:29A-9(a), and then the pre-petition, of course, he's

9  going to handle under Sub C.

10          So with that amount being set aside, I believe

11  that he should be able to satisfy the requirements of

12  11:29, and that confirmation shouldn't be held up,

13  assuming all the other requirements can be met.

14          THE COURT:  Right.  Okay.  All right.

15          So setting this money aside then, the real

16  issue, quite frankly, it seems, is whether or not it's

17  appropriate to do this by negative notice, with these two

18  changes.  I mean, I say two changes.  I really mean one

19  change because all you're really amending is Class 3, and

20  then the numbers in Class 3, but that change to take into

21  account these two claims, without having to come back and

22  have another hearing in the absence of an objection.

23          Okay.  All right.

24          Mr. Steuer, any issues?

25          MR. STEUER:  No, Your Honor.  We feel this is

1   an appropriate way to resolve this issue.

2              THE COURT:  Okay.  Thank you.

3              All right.  I would, if it's all right, Mr.

4   Howell, I would appreciate hearing a little bit from Mr.

5   Richelieu.  I kept up, to some extent, with the

6   properties that have been for sale, and not for sale,

7   which ones have been sold, and which ones haven't  I know

8   there have been funds in the trust account, at various

9   and sundry times.

10             If I could just hear a little bit from Mr.

11  Richelieu with regard to what remains to be sold, what

12  has been recouped thus far, where those funds are, and

13  what we hope for in the future.

14             MR. HOWELL:  And with the Court's further

15  permission, I would like to take Mr. Richelieu then

16  through the 11:29A requirements, with respect to the plan

17  of confirmation.

18             THE COURT:  While you're at it.

19             MR. HOWELL:  Yes.

20             THE COURT:  Yes.  Okay.  All right.

21             Mr. Richelieu, if you'll step up, Ms. Bennett

22  (phonetic) will swear you in.

23  O W E N   R I C H E L I E U, DEBTOR, SWORN.

24             THE COURT:  Come on up and have a seat, Mr.

25  Richelieu.

 1              MR. HOWELL:  With the Court's permission, I

 2      will give Mr. Richelieu a copy of the plan (inaudible).

 3              Which you have already?

 4              THE WITNESS:  I already have it.

 5      DIRECT EXAMINATION BY MR. HOWELL:

 6         Q    Can you tell us your name please?

 7      A    My name is Owen H. Richelieu, III.

 8         Q    And what is your relationship with the debtors

 9      in this proceeding?

10      A    I am a member of the Board of Directors of

11      Streckrich Petro Corporation, a member of the Board of

12      Directors of Fisca Oil Co. Inc.  I am a Vice President of

13      Streckrich Petro Corporation, and a Vice President of

14      Fisca Oil Co. Inc.

15         Q    And are you familiar with the operations,

16      structure, ownership, and all matters necessary for the

17      operation of these businesses?

18      A    I am.

19         Q    Who else serves as an officer, director, or

20      employee?

21      A    Well, I couldn't list all of the employees, but --

22         Q    Who else as an -- who else serves as an officer

23      and director?

24      A    The sole other officer and director of both of the

25      debtors is George Paul Streckmann, and of Fisca Oil

1    Company, Sean Brown is a Vice President of Operations.

2         Q    Are you and will Mr. Streckmann, Mr. Brown, and

3    yourself remain in those positions as you've described

4    them after a plan is confirmed, if the Court so does so?

5    A    We will.

6         Q    Are you familiar with the disclosure statement

7    and plan of reorganization filed in these proceedings?

8    A    I am.

9         Q    And were those documents prepared with your

10   assistance and with your direction?

11   A    Yes.

12        Q    And provided information that you provided to

13   counsel?  Did --

14   A    Yes.

15        Q    -- it?  Describe generally the outline of this

16   plan of reorganization for these entities.

17   A    Well, I think that we all will recall that the

18   genesis of this bankruptcy proceeding for both companies

19   was not anything that resulted from operational

20   difficulties or anything relating to the routine

21   operation of the business, but with our inability to

22   satisfy a shareholder note that came due from the selling

23   family.  And so our intention, all along, has been to

24   protect Mr. Streckmann and my equity investment, and to

25   repay all creditors 100 cents on the dollar from the get-

1    go.

2         Q    Do -- are there any unsecured -- or very many

3    unsecured creditors of Fisca?

4    A    No.

5         Q    Why not?

6    A    Because we have routinely always paid our bills.

7         Q    What was the role of Mr. Steuer's client, A.E.

8    Wease, through this proceeding?

9    A    A.E. Wease, historically, has been a major supplier

10   of Fisca Oil and, similarly, Fisca Oil has been, I know,

11   at times, the single largest customer of the A.E. Wease

12   Company.  Our relationship with A.E. Wease, both at a

13   corporate level and at a personal level, is one that I

14   would characterize as very close.  The president of A.E.

15   Wease and I probably speak on the phone at least three,

16   and sometimes as many as ten, times a week.  He has, on

17   occasion flown up to Milwaukee to meet with us up here.

18   We have gone down to St. Louis to meet with him down

19   there.  They have always been a tremendous asset to us

20   during this difficult time.  They, themselves, have gone

21   through Chapter 11 in the early '90s, and lived to tell

22   the tale.

23        Q    You know that the plan identifies a class as

24   the November 2009 administrative claims.

25   A    Yes.

1       Q    Can you briefly tell us, for the record, how

2    that class of claims came about?

3    A    We will all recall that when Fisca and Streckrich

4    entered into their global settlement agreement to end the

5    Hudson litigation, the effective time of that agreement,

6    where we cleaved part of the company off, and gave it

7    back to the Estate of M.R. Hudson, and the Hudson

8    Foundation.  There was, obviously, a great deal of

9    activity going on, both at the Milwaukee corporate office

10   and the Kansas City corporate office, especially since

11   the Kansas City corporate office was going to revert to

12   the control of the Hudson Foundation.  The -- while I am

13   not privy, directly, to what conversations were going on

14   on the Hudson side, with people who were, prior to

15   November 20, employees of Fisca Oil, and who, subsequent

16   to November 20, would not be employees of Fisca Oil

17   anymore, the general instruction, I'm sure, was make sure

18   that Fisca doesn't owe anything when we take these

19   locations back.  And I think that, rightly so, that was -

20   - that was fine.  We get to the November 20 settlement

21   date.  We had a big chunk of the company back to the

22   Hudson family, continue with our much smaller operations

23   and because there is this tremendous outflow of cash,

24   immediately proceeding the November 20 hand back, we get

25   to November 21, and my liquidity -- or the company's

1    liquidity is a completely different animal than it was on

2    November 19th.

3        Q    Have you been in contact with these various

4    creditors that we now designate as the November 2009

5    administrative claims?

6    A    Every single one.

7        Q    And have you explained to them the situation

8    how this arose?

9    A    I have.

10       Q    You heard -- did you hear then, before you took

11   the stand, the discussion regarding the Ohio Department

12   of Taxation and the Internal Revenue Service, and what is

13   proposed with respect to this plan of reorganization, and

14   its modification?

15   A    Indeed.

16       Q    And does the debtor agree with the proposals

17   that we've put forth on this record today?

18   A    Completely.

19       Q    To your knowledge, Mr. Richelieu, is the plan

20   proposed and included -- and including this requested

21   amendment, does that plan comply with all the applicable

22   provisions of the United States Bankruptcy Code?

23   A    Based on the advice of counsel, I believe that it

24   does.

25       Q    And to your knowledge, have the debtors, that

 1  is Streckrich and Fisca, complied with the applicable

 2  provisions of the bankruptcy code?

 3  A    Yes.

 4      Q    You've paid the U.S. Trustee fee through June,

 5  correct?

 6  A    For both debtors.

 7      Q    And you understand that until such time as

 8  there is a final decree closing cases that there will be

 9  continuing obligations to the United States Trustee's

10  Office?

11  A    Yes.

12      Q    Is the plan, as proposed for both of these

13  debtors, presented, in your knowledge, in good faith, and

14  not by any means forbidden by law?

15  A    Certainly, to my knowledge, it is in good faith, and

16  based on the advice of counsel, I believe it complies

17  with the applicable statutes.

18      Q    Should this plan be confirmed, will the debtor

19  make the payments required under the plan?

20  A    Absolutely.

21      Q    With respect to the compensation of both you

22  and Mr. Streckmann, have either of you been paid since

23  the petition date -- paid a wage since the petition date

24  for Streckmann, in late October 2008 -- or Streckrich?

25  Excuse me.

 1   A    No.

 2        Q    And as you go forward, is there any budgetary

 3   analysis that allows you and Mr. Streckmann to get paid

 4   prior to getting all these creditors paid?

 5   A    No.

 6        Q    To the extent that any agencies of the

 7   government control, regulate, or otherwise provide

 8   instruction about how to operate a fuel station, and a

 9   convenience store, will you comply with those rules?

10   A    Absolutely.

11        Q    Now you know that certain ballots were sent out

12   to creditors in this proceeding?

13   A    Yes.

14        Q    And you know that acceptances were asked of the

15   November 2009 administrative claims, correct?

16   A    Yes.

17        Q    And that a report consisting of an affidavit of

18   myself, regarding the balloting and acceptance has been

19   filed with the Court, correct?

20   A    Yes.

21        Q    Did any creditor that submitted and returned a

22   ballot or acceptance reject the plan as proposed?

23   A    No.

24        Q    Of those that did return ballots then, were a

25   hundred percent in favor of the plan?

1   A    All creditors that we polled were in favor of the

2   plan as proposed.

3       Q    The Class 3 that we've talked about already,

4   regarding allowed priority claims, when the plan was put

5   together, was the debtor aware of either the Department

6   of Ohio -- the Ohio Taxation Department's claim, or the

7   IRS amended claim?

8   A    No, those claims were both received in May, and I

9   believe that we filed the plan April 29th.

10      Q    Are you asking authority and permission from

11  this Court to amend the plan accordingly to allow for the

12  treatment of these tax claims, should any amount be

13  allowed?

14  A    Yes.

15      Q    And do you understand that as to pre-petition

16  tax liabilities, the Bankruptcy Code allows and mandates,

17  rather, that those tax liabilities be paid in equal

18  installments, over a five-year period from the date of

19  the petition?

20  A    I do.

21      Q    And to the extent that the Department of

22  Taxation of Ohio has an allowed post-petition claim, it

23  needs to be paid right away?

24  A    Correct.

25      Q    Upon any order approving and allowing the

1  claim?

2  A    Correct.

3     Q    All right.  Now there's an administrative class

4  of claims that include your attorneys, correct?

5  A    Yes.

6     Q    And have your attorneys agreed -- made an

7  agreement with the debtors with respect to their payment?

8  A    To the best of my knowledge, we have an agreement.

9     Q    And you understand that there are funds being

10  held by firm's trust account that were paid prior to the

11  petition dates of each of these debtors?

12  A    Yes.

13     Q    And that if allowed, in an eventual hearing

14  seeking approval of these professional fees, that the

15  amounts that were paid in advance, and on retainer, would

16  be applied against the amounts allowed?

17  A    I do.

18     Q    And should there be any amount remaining after

19  the allowance of the retainer, any amount owing to the

20  firm will be rolled into the payments to the

21  administrative class, on a going forward basis?

22  A    Yes.

23     Q    And do you also understand that your counsel's

24  payment can only be asked to pro -- paid pro rata only

25  after this class is paid -- is paid more than 50 percent

1  of its current claim?

2  A     I do understand.

3         Q     And do you agree with that?

4  A     I think it is most equitable.

5         Q     As to other post-petition operational expenses,

6  are they paid current, or within terms?

7  A     To the best of my knowledge, yes.

8         Q     With respect to taxes, Mr. Richelieu, that have

9  accrued, post-petition, but for the Department of Ohio,

10 do you understand that the tax liabilities are paid --

11 that are due are paid, and your taxes are current?

12 A     Based on my latest conversations with Mr. Thomas, at

13 the IRS, I believe that to be the case.

14        Q     Now will the confirmation of the plan, if

15 authorized by the Court, be followed by -- or likely to

16 be followed by the liquidation or the need for further

17 financial reorganization of either Fisca Oil, or

18 Streckrich Petro?

19 A     I do not believe so.

20        Q     Now the payments under the plan are derived

21 from what source, Mr. Richelieu?

22 A     The liquidation of nonoperating assets of the Fisca

23 Oil Company.

24        Q     Are those assets -- well, are all the real

25 estate assets identified at Page 3 of the disclosure

1    statement?

2    A    Yes.

3         Q    And does this list include not only operating

4    locations, but also nonoperating locations?

5    A    Yes.

6         Q    For our purposes here, Number 5, Alexandria,

7    Missouri, at the time the plan was filed, and disclosure

8    statement, was operating, correct?

9    A    Yes.

10        Q    And Number 13 -- no, I'm sorry.  Number 12,

11   Asbury, is -- was operating, and continues to operate,

12   correct?

13   A    That is correct.

14        Q    Now why is Alexandria temporarily closed?

15   A    The Alexandria, Missouri location sits on a bluff at

16   the intersection of the Mississippi and Iowa Rivers on

17   the border of Iowa.  And during the past month, due to

18   heavy rainfall in that area, the risk of flooding of that

19   location, has -- we have perceived to be significant.

20   Two years ago, the station went under water.  Seven years

21   ago, the station went under water so quickly that the

22   employees were running out of the store.  So in both an

23   effort to protect the location, provide for the safety of

24   the inventory and, certainly, to provide for the safety

25   of employees, we have temporarily closed that location

 1    during this period of flood danger.

 2          Q    Has the fuel been taken out of the ground?

 3    A    Yes.

 4          Q    Have the twinkies been taken off the shelves?

 5    A    They have.

 6          Q    And the beer taken out of the refrigerator?

 7    A    Yes.

 8          Q    It's an empty store?

 9    A    It is an empty store.

10          Q    Is there any possibility that this property

11    could be sold to a third party?

12    A    Yes.

13          Q    And is there activity going on that it might be

14    sold?

15    A    I have had numerous discussions with numerous

16    interested parties in acquiring that piece of real

17    property.

18          Q    And would the debtor contemplate the sale of

19    the Alexandria, Missouri property in conjunction with its

20    operations on a going forward basis, and as necessary to

21    satisfy the plan requirements?

22    A    Absolutely.

23          Q    Now the other stores, apart from Asbury, Number

24    12, these are closed stores?

25    A    That is correct.

1      Q    And are any of these being actively marketed at

2   this point?

3   A    Yes.

4      Q    Which ones?

5   A    Store No. 1, St. Charles, Missouri; Store No. 4,

6   Abilene, Texas; Store No. 11, Lima, Ohio; and Store No.

7   13, Joplin, Missouri, is under contract for sale, and

8   that transaction is either -- either closed yesterday

9   afternoon or today.

10     Q    And those proceeds will be wired to my firm's

11  trust account, correct?

12  A    That is correct.

13     Q    Would -- are these properties that are closed

14  under some environmental watch list, or clearance for

15  sale to third parties because of their former use as fuel

16  stations?

17  A    Some of the locations are not immediately saleable,

18  as we are implementing a plan of environmental

19  remediation.  Those plans of environmental remediation

20  are being administered both by the company and the

21  relevant state regulatory authorities, and as those

22  remediation plans are completed, then those properties

23  will be available for sale.

24     Q    How did you arrive -- and how did the debtor

25  arrive at the values that are identified in this

1    disclosure statement for all of the properties, Mr.

2    Richelieu?

3    A    When current ownership acquired the company, we had

4    appraisals by a qualified national appraisal firm

5    performed on each of the real property assets of the

6    company.  In connection with putting this plan together,

7    we began with those figures.  We then surveyed local real

8    estate brokers in each of these markets to discuss with

9    them what a potentially more realistic or current market

10   value of the real properties would be, in an attempt to

11   determine, honestly, where we were with what kind of

12   proceeds could we realize if we started an aggressive

13   program of asset disposition.  And, obviously, then that

14   current estimated market value is, in most instances,

15   significantly less than the 2007/2008 appraisal values.

16   But we believe that, in most instances, our current

17   market estimated value is an accurate representation of

18   the current market value of these real properties.

19        Q    And you, on behalf of he debtor, believe that

20   the values that are set forth in the disclosure statement

21   represent a reasonable fair market value for which Fisca

22   will receive in the sale of these properties?

23   A    To the best of my knowledge, yes.

24        Q    Based on the fact that you have these

25   properties, and some of them are for sale, and their

1    anticipated fair market value in sales prices that you

2    just testified, do you believe that the debtors can make

3    the payments on allowed claims, as set forth in the plan

4    of reorganization?

5    A    I absolutely do.

6         Q    Now if these tax claims are allowed in full

7    -- I think we have $451,000 to the IRS, and $28,000 to

8    the Department of Taxation in Ohio, do you still believe,

9    if you add in an additional $500,000, approximately, that

10   there is sufficient property values to satisfy these

11   claims, if these tax claims are allowed?

12   A    With about a 20 percent cushion.

13        Q    Now let me see if I got -- I want to make sure

14   that we're okay with the numbers.  The administrative

15   claims, as identified in the plan and in the disclosure

16   statements are about $418,000, correct?

17   A    That is correct.

18        Q    The A.E. Wease claim is identified as $300,000,

19   correct?

20   A    That is correct.

21        Q    And if I assume there are some fees that get

22   rolled in after the application of the retainer amount,

23   you and I have used a number of $144,000 as a potential

24   remainder of what's due the firm, correct?

25   A    That is correct.

1    Q    And so, given those numbers, what's the total

2    amount of the claims, without the tax authorities?

3    A    $858,005.

4    Q    All right.  Now in my firm's trust account,

5    there's some money from the Blue Summit sale, correct?

6    A    That is correct.

7    Q    It's approximately $101,000.

8    A    That is correct.

9    Q    So that would be a deduct off the amounts that

10   we've just talked about, right?

11   A    That is correct.

12   Q    Resulting in about $747,000?

13   A    That is correct.

14   Q    Now I want you to assume that the tax

15   liabilities, despite the debtor's objections, are allowed

16   in full, and so you add approximately $500,000 to the

17   balance you and I just came up with.  What's the total

18   amount that's due under the plan?

19   A    The total plan payments, in that instance, would

20   then be approximately 1.25 million.

21   Q    And you have identified what as the total value

22   of all of the properties for Fisca?

23   A    Approximately $1.7 million.

24   Q    Are you prepared to do what's necessary,

25   selling the properties in order to get these creditors

1   paid in full?

2   A    Absolutely.

3        Q    Do you think, Mr. Richelieu, that you, Mr.

4   Streckmann, and the employees that you have, can make

5   this plan work so that Fisca continues to operate and

6   viable company, and Streckrich continues its situation as

7   the holding company?

8   A    I absolutely do.  We are both confident in existing

9   management.  We have received unbelievable support from

10  our creditors.  We have a very committed group of

11  employees.  I think that we can implement -- complete the

12  implementation of this plan, in short order,

13  successfully, and do what we always said we were going to

14  do, which is pay everybody 100 cents on the dollar.  And

15  I think that we're going to do that sooner, rather than

16  later.

17           MR. HOWELL:  I think I've made it through

18  11:29, Judge.

19           THE COURT:  Hold on just one second.

20           MR. HOWELL:  Subject to someone telling me I

21  didn't.

22           THE COURT:  13?

23           MR. HOWELL:  Pardon me?  13?

24           THE COURT:  There may not be any.

25  BY MR. HOWELL:

1     Q    Does Fisca have any retiree benefits that it's

2    obligated for?

3    A    No.

4              THE COURT:  Thank you.  Not to be picky.

5    BY MR. HOWELL:

6     Q    Are there any domestic support obligations that

7    Fisca somehow, some way, is obligated for?

8    A    Some of our employees may be subject to child

9    support or other payments being withheld from their

10   paychecks, as a result of some either court or

11   administrative body's order.  We comply with those orders

12   and remit those funds to the relevant authority for

13   eventual distribution to the final recipient.

14    Q    When these properties are sold, is it -- doe

15   the debtor intend to transfer these properties in

16   accordance with any applicable provisions of the law of

17   the jurisdiction in which these properties are located,

18   including any environmental laws?

19   A    Absolutely.

20             THE COURT:  Mr. Richelieu, can I just ask one

21   question.  With regard to the Joplin property that was

22   closing either yesterday or that is in the process of

23   closing today, the amount -- the current estimated market

24   value that's listed on Page 3 of the disclosure statement

25   is $245,000, and I think I heard Mr. Howell make some

1   reference to what you anticipated to have come in to his

2   trust account over the next few days, is that the amount

3   that you're anticipating?

4                THE WITNESS:  No, the final contract sales

5   price on that property was $240,000.

6                THE COURT:  Okay.

7                THE WITNESS:  We had a backup offer on that

8   property of $250,000.  At a prior hearing, appointing

9   -- authorizing us to sell that property and appointing

10  the broker, the -- there was a six percent commission

11  included --

12               THE COURT:  I remember there being a

13  commission.

14               THE WITNESS:  There are some other title

15  company costs, and escrow costs, and whatnot.  We

16  anticipate that the net proceeds from that sale is

17  approximately 223,000.

18               THE COURT:  Okay.  All right.  Thank you.

19               All right.  Sorry.

20               Mr. Steuer, questions for Mr. Richelieu?

21               MR. STEUER:  Just a couple.

22  CROSS-EXAMINATION BY MR. STEUER:

23       Q    What's the status of the closing on St.

24  Charles?

25       A    The buyer on the St. Charles property has been

1  unable to secure financing from their bank.

2  Approximately two weeks ago, the broker representing the

3  buyer contacted me and asked if we would be willing to

4  entertain providing seller financing for the sale of that

5  property, with some down payment.  Mr. Streckmann and I

6  discussed it.  Mr. Streckmann and I discussed the matter

7  with Mr. Howell, and we decided that it was in the best

8  interest of both the Fisca Oil Company and our creditors

9  to move on to another buyer who could more expeditiously

10  provide us with the funds, rather than potentially get

11  into a situation where we were having to foreclose, and

12  where we would be unable to remarket the property.

13       Q    So as of now, that property is relisted, and

14  there's no sale imminently?

15  A    That is correct.  However, there -- on that

16  particular asset there is fairly high -- what I would

17  characterize as fairly high level of interest.

18       Q    I just had one other topic I wanted to clarify.

19  Class 1 is allowed administrative convenience expense

20  claims.  Those are your attorney's fees and your post-

21  petition expenses, right?

22  A    Yes.

23       Q    Okay.  And as I understand it, A.E. Wease has

24  some money coming in that.  When would they expect

25  payment of that?

1  A     (No verbal response)

2       Q     It says here, "paid in full by their terms, or

3  as allowed by order of the court."

4  A     Well, I think that the plan contemplates that those

5  are going to be paid over some period of time, as we have

6  the availability of the funds from the asset dispositions

7  to be able to take care of those.  I hope that that is --

8       Q     I -- it's my understanding they have to be paid

9  within a short period of time.

10  A     And that's what we fully intend.

11       Q     So I could advise them that they can anticipate

12  being paid shortly after the plan is confirmed?

13  A     Yes, and as I had a conversation with your client

14  this morning, and that was -- that was what we were

15  discussing.

16       Q     I just wanted to confirm that on the record.

17  Thank you.

18  A     That's fine.

19            MR. STEUER:  That was all.

20            THE COURT:  Thank you.

21            Ms. Schneider?

22  CROSS-EXAMINATION BY MS. SCHNEIDER:

23       Q     Mr. Richelieu, on the St. Charles property, are

24  they seeking -- the people that put in the offer the

25  first time, are they seeking additional financing, or

1   other sources?  Are they -- is their offer still a

2   possibility?

3   A    I don't believe so.  I think that they, to the best

4   of my knowledge, based on the representations that both

5   our broker and their broker have made to me, they sort of

6   pulled every lever they could, and couldn't make it

7   happen.  So we think it best, rather than --

8         Q    Continuing --

9   A    That we would continue to market the property.  If,

10  however, they were to show up tomorrow with $225,000, I

11  can assure that we would not turn that offer down.

12        Q    And was that the amount of their offer?

13  A    I want to say yes, but I think it actually may have

14  been a little bit more.  I can get you the exact number,

15  if you'd like.

16        Q    The other question that I had for you is the --

17  the April -- we talked about this before, but I'd like

18  your testimony on it.

19  A    Yes.

20        Q    The April monthly operating report shows unpaid

21  post-petition taxes.

22  A    Yes.

23        Q    And those were paid during the month of May?

24  A    Yes.  Excuse me.  Based on my discussions with Val

25  Thomas, the IRS agent in the insolvency unit, that is

1  supervising the tax aspects of both the Streckrich Petro

2  Corporation and Fisca Oil Co., he represented to me that

3  their system is showing that we are actually to the

4  positive and have potentially deposited as much as 15,000

5  to $20,000 in excess of the depository requirements for

6  the 941 withholding taxes.  And so what he and I

7  discussed, and what the intention of the company is that

8  we'll sort of reconcile that when we do the second

9  quarter 941 for 2010.

10             THE COURT:  When did he make that

11  representation to you?

12             THE WITNESS:  In the conversation -- the tail

13  end of last week, or Tuesday morning.

14             THE COURT:  Okay.  So in the last few days?

15             THE WITNESS:  Yeah.  Yeah.

16  BY MS. SCHNEIDER:

17     Q    So those post-petition taxes that are reflected

18  in the April monthly operating report have, in fact, been

19  paid?

20  A    Yes.

21             MS. SCHNEIDER:  Nothing further.

22             THE COURT:  Okay.

23             Mr. Howell, any followup questions for Mr.

24  Richelieu?

25             MR. HOWELL:  No, Your Honor.

1          THE COURT:  Okay.

2          Thank you, Mr. Richelieu.  You can go back and

3     have a seat.

4          THE WITNESS:  Thank you.

5                    (Witness excused)

6          THE COURT:  All right.

7          Mr. Howell, based on the testimony that I've

8     heard today, it appears to me that Mr. Richelieu has

9     testified with regard to all of the factors listed and

10    necessary for confirmation under 11:29A, with one

11    exception, and that is that the plan, the amended plan,

12    as it now stands, may not be in compliance with 11:29A-9,

13    given tax claims that have come in.  And I understand

14    what is being proposed there.

15         Based on the testimony that you have heard, Mr.

16    Steuer, any objection to confirmation of this plan, and

17    if so, on what basis?

18         MR. STEUER:  No objection, Your Honor.  We --

19         THE COURT:  Thank you.

20         MR. STEUER:  -- would urge confirmation.

21         THE COURT:  Thank you.

22         All right.  Ms. Schneider, any objection to

23    confirmation of the plan, given the tax claims that we've

24    discussed, and if so, on what basis?

25         MS. SCHNEIDER:  No, Your Honor.

1          THE COURT:  All right.

2          I believe that the testimony has, in fact,

3     satisfied all of the criteria listed in 11:29A, again,

4     with the exception of the administrative claims referred

5     to 11:29A-9.  Therefore, I am going to grant the motion

6     to confirm the plan on all bases, with the exception of

7     the treatment of the Class 3 allowed priority claims.

8          What I'm going to ask that the debtor in

9     possession do is amend that portion of the plan which

10    relates to the Class 3 allowed priority claims to, as

11    proposed here in court, include the claims of the Ohio

12    Department of Revenue, and the Internal Revenue Service.

13         To the extent that those are allowed after

14    hearing on any objections to those claims, and that's my

15    way of saying that it's all of our understanding that the

16    plan will proceed to pay those claims, only if they are,

17    in fact, allowed after a hearing.  But I'm asking that

18    the plan be amended to include them now, ahead of any

19    hearing on those objections.

20         I will allow the debtor in possession to

21    solicit objections to that change, under the negative

22    notice procedure that we use here.  I'd ask that the

23    creditors be given 21 days to object.

24         If there is no objection within that 21-day

25    period, Mr. Howell, if you will submit to me an order

1   confirming the plan as amended, I will sign that,

2   assuming that I also have something either from you, or

3   Ms. Schneider, or both, indicating to me that any fees

4   due and owing as of whatever date that may be have been

5   paid and are current.  If all of that verbiage makes

6   sense.

7              So I'm assuming that, at some point, if there's

8   no objection to the change with regard to the Class 3

9   creditors, that Mr. Howell and Ms. Schneider are going to

10  get in touch with me and say, you know, we haven't had an

11  objection, and the fees are paid, and so we're good to

12  go.

13             Does that solve --

14             MR. HOWELL:  I think it does.

15             THE COURT:  -- sort of the problem with regard

16  to the claims, barring any disallowance or allowance

17  thereof?

18             MR. HOWELL:  More than sort of, Judge, but I

19  guess what -- what is derived from today's hearing?  Is

20  there a piece of paper or an order that you want me to

21  submit at this point?

22             THE COURT:  No.  No, I think as of today's

23  date, we'll reflect in the minutes, that I approved the

24  plan with the exception of the treatment of the Class 3

25  creditors, that the plan's going to be amended in that

1    respect only, and that assuming there are no objections

2    to that amendment, I will approve the plan by order, upon

3    being notified that there are no objections, and being

4    notified that the fees have been paid.  So, no, I don't

5    expect any paper today.

6              MR. HOWELL:  As to the hold back of $27,500,

7    will the Court minutes reflect that the debtor is to do

8    so until such time as the Ohio claim is resolved?

9              THE COURT:  Yes.  I'm asking that $27,500 be

10   retained in the trust account of Whyte Hirschboeck for

11   the purposes of having those funds available until such

12   time as that claim has been resolved, and the minutes

13   will indicate that as well.

14             All right.  Mr. Howell, what else do we need to

15   do today?

16             MR. HOWELL:  Other than turning it back to Ms.

17   Schneider, relative to her motion to convert, the debtor

18   has no other proceedings before this Court.

19             THE COURT:  Thank you.

20             Mr. Steuer, anything further on behalf of A.E.

21   Wease with regard to today's proceeding?

22             MR. STEUER:  No.  I would just urge Ms.

23   Schneider to comply with her expression earlier that if

24   the plan gets confirmed, she would withdraw the motion.

25             THE COURT:  I have a feeling Ms. Schneider

1    doesn't want to fight this battle if she doesn't have to.

2              Ms. Schneider?

3              MS. SCHNEIDER:  That's right, Your Honor.  I

4    withdraw our motion to convert.

5              THE COURT:  Okay.

6              The record will show, and the minutes will

7    reflect that the United States Trustee has withdrawn its

8    motion to convert Fisca -- the Fisca Oil Co. matter, and

9    so I won't do anything further other than issue the

10   minutes, until such time that I hear that there has been

11   no objection to the amendment that we've discussed with

12   regard to the plan.  And at that point in time, assuming

13   there's been no objection -- and I can imagine that there

14   wouldn't be much ground for it, I will sign the order.

15             And then, in the meantime, obviously, we'll

16   deal with the bases for the objections to those two

17   claims, at the July hearing, which may end up making all

18   of this a belt and suspenders, but I don't know.  I

19   haven't reviewed those objections, other than what Mr.

20   Howell has said in court today.  I don't know what the

21   bases for them are, so we'll cross that bridge when we

22   get to it.

23             MR. HOWELL:  Thank you, Your Honor.

24             THE COURT:  Thank you all.

25             MR. STEUER:  Thank you, Your Honor.

1          MS. SCHNEIDER:  Thank you.

2          THE COURT:  Thank you very much.

3    Congratulations, I think.  I'm hoping.

4          All right.

5          (Proceedings concluded at 4:08 p.m.)

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25